## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **VONNA M. SEEBER,** | ) | |
| **an individual,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 04-CV-0451-CVE-PJC** |
| | ) | |
| **THE WILLIAMS COMPANIES, INC.,** | ) | |
| **a Delaware corporation, and WILLIAMS** | ) | |
| **ENERGY PARTNERS, L.P., a Delaware** | ) | |
| **Limited Partnership,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court are the following motions: Defendants' Motion for Summary Judgment and Brief in Support Thereof (Dkt. # 59); Defendants' Motion to Strike Affidavit of Vonna Seeber (Dkt. # 86); Plaintiff's Motion to Strike (Dkt. # 89); Defendant's Motion in Limine to Exclude Testimony and Evidence by Plaintiff's Expert (Dkt. # 82).  Defendants, The Williams Companies, Inc. and Williams Energy Services, LLC (collectively "Williams"),[1] move for summary judgment on plaintiff Vonna Seeber's claims of age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), retaliation in violation of Title VII, sexual harassment in violation of Title VII, wrongful discharge in violation of Oklahoma public policy, and

---

[1]    Plaintiff was actually employed by Williams Energy Services, LLC, which was formerly Williams Energy Partners, L.P.

intentional infliction of emotional distress.  Defendants also ask the Court to exclude the testimony of plaintiff's economic damages expert under Fed. R. Evid. 702.

## I.

Plaintiff began employment with Williams in March 1984 as a terminal operator.  She performed that work in Olathe, Kansas and Heyworth, Illinois.  In October 1984, plaintiff began work as a technician in Omaha, Nebraska, but was later transferred to Rosemont, Minnesota, and Des Moines, Iowa.  Although plaintiff denies having difficulties getting along with the other employees while employed in Des Moines, Iowa, her deposition testimony and pleadings suggest that she struggled to develop an amicable relationship with at least two other employees, Alex Calder and Jim Davis.  Plaintiff's supervisor noted on a performance evaluation  that plaintiff's interpersonal skills could use "slight improvement."  Plaintiff did not disagree with that assessment, because she admits that she had a poor relationship with Calder.  Plaintiff testified that during her employment in Des Moines, she was not subjected to sexual harassment.

In 1987, plaintiff requested, and was permitted to, transfer from Des Moines to Sioux Falls, South Dakota.  While in Sioux Falls, plaintiff had several supervisors, including Dennis Thebeau and Jay Wiese.  Plaintiff believed that Thebeau did not like her and states that she disliked working under Thebeau. In contrast, plaintiff got along well with Wiese.  Plaintiff admits that Wiese counseled plaintiff  regarding her ability to get along with co-workers.  Plaintiff claims that she had problems with the workplace atmosphere is Sioux Falls, because of the way her male coworkers treated her.  She was the only female technician and states that other employees frequently made sexually explicit and obscene remarks that offended her.  She states the she responded aggressively when male co-workers allegedly harassed her and attributes the perception that she had difficulties

with interpersonal relationships to the sexually-charged nature of the work environment.  From 1987 to 1993, she was consistently rated as a competent employee and her employment evaluations show that her supervisors believed her interpersonal skills were showing noticeable improvement.[2]

Plaintiff worked as a technician until August 1993, when she was granted a leave of absence to attend law school at the University of Notre Dame.  She attempted to get an internship with Williams during law school, but was allegedly informed that Williams accepted only interns ranked in the top ten percent of their law school class.  After graduating from law school in 1996, she did not apply for a position in Williams' legal department because she did not believe her class rank or grades were sufficient.  Instead, plaintiff accepted employment as an environmental engineer at Williams.  Her supervisor  stated that plaintiff seemed oversensitive to workplace stress, but accomplished her work in a timely manner.  She worked as an environmental engineer for approximately a year and a half before accepting a new position in the real estate department. Plaintiff does not allege that she suffered any discrimination while working in the real estate department.

In April 1998, plaintiff left the real estate department to accept the position of project manager in the independent terminals group.  Her supervisor in this job was Jay Weise, whom she knew from prior experience in the company and referred to as a mentor.  She received a $5,000 yearly raise in her new position, bringing her annual salary to $60,000.  As a project manager, an important component of her job was to maintain good personal relationships with other employees

---

[2]     Williams utilized a performance evaluation system assigning each employee a one to five rating in fourteen categories.  The highest rating was a one, which was interpreted as outstanding job performance.  The lowest rating was five, meaning that an employee needed significant improvement.  A rating of three meant that the employee was competent, fully meeting the criteria or standards of performance for most aspects of their job.

and customers.  During 1999 and 2000, her supervisor was David Games.  She complained that Games sexually harassed her by coming around her desk and sitting on her lap to work on her computer.  At least once, she told Games to stop this behavior and she contacted the human resources department.[3]  Weise preferred to resolve the matter within the department and asked plaintiff and Games to work things out themselves.  In 2000, Games was transferred out of the department after two other project managers also complained that he was a poor supervisor.

Robert Barnes replaced Games as plaintiff's supervisor and completed her performance evaluation for 2000.  Plaintiff received a performance evaluation critical of her personal skills, even though the evaluation suggests she was performing her job tasks at a high level.  Plaintiff received marks ranging from A to A- for job performance, but received a D rating for her ability to work with peers and overall peer relationships.[4]  In particular, the evaluation stated that:

> This is an area that Vonna needs to develop if she is to advance within Williams. Through Vonna's actions and body language she comes across as not being approachable by others.  Vonna needs to understand that all aspects of her interaction with others reflects on the relationship.  She needs to understand we are a team and working with and assisting others is necessary and expected.

Dkt. # 75, Ex. 15, Performance Appraisal, at 1.  Plaintiff noted her objection to the evaluation before signing it.  The evaluation also criticized plaintiff for her ability to deal with ambiguity, finding that plaintiff "is a very task oriented and if things don't go as planned she gets very frustrated and stressed.  Vonna needs to control her emotions in a more manageable way.  Vonna needs to focus

---

[3]     Although plaintiff sent an e-mail to Gail Campbell in the human resources department, she did not file a formal complaint.  Human resources advised plaintiff to contact Wiese to resolve the matter.

[4]     An "A" rating means that the employee met expectations for her position but did not exceed what was required.  If an employee received a "D" rating, she did not meet the job expecations.

on doing a good job and not worry about other things not specific to her area." Id. at 4.  Otherwise, plaintiff's supervisor noted that she was a competent and hardworking employee but that her organizational skills might limit her ability to obtain a management position.  In order to improve her interpersonal skills, plaintiff attended a course Williams offered to its employees on these issues.

Several of plaintiff's co-workers have testified that it was difficult to work with plaintiff, but plaintiff disputes their characterization of her workplace demeanor.  Bill Nelson stated that plaintiff refused to speak to him unless they needed to discuss business.  Plaintiff claims that Nelson insulted her and she rebuked his attempts to resolve the matter.  Nelson felt that this created a negative atmosphere in the workplace, but did not prevent him or plaintiff from completing their work. Chris Nalley testified that it seemed like "sometimes there was a black cloud in [plaintiff's] cubicle," but her mood swings did not seem to impact her work.  Plaintiff states that the "black cloud" Nalley refers to related to her personal life, and did not affect her relationships with co-workers or her job performance. Gary Potacka stated that he did not have any difficulty working with plaintiff.  On one occasion, plaintiff believed that Potacka insinuated that she was disorganized, but Potacka believed plaintiff was overreacting. Jon Lawrence testified that he overheard internal customers commenting that they had problems communicating with plaintiff.  Specifically, Lawrence said that plaintiff had reputation for behaving unpleasantly in the morning and he recalls plaintiff treating him rudely on several occasions.   Plaintiff insists that none of these personally traits impaired her work performance.

Later in 2000, Weise created a cross-training program for project managers and schedulers in his department.[5]  This program required project managers and schedulers to trade job duties. Plaintiff agreed to participate in the cross-training program, but was clear that she viewed scheduling as a demotion.  The parties do not dispute that Williams did not reduce plaintiff's salary when it moved plaintiff into scheduling.  Plaintiff claims that the cross-training program was an excuse to terminate her and another project manager, Selby, both of whom were older.[6]  Plaintiff asserts that Nelson, also a project manager, did not have to move into scheduling, which is evidence of age and gender discrimination.  Williams asserts that Nelson would eventually have to do a rotation in scheduling, but his rotation was delayed until he completed a large project.[7]  Before moving into the scheduling department, plaintiff was informed that she needed to improve her "communication and people skills."  Wiese allowed plaintiff to use one of his previously scheduled sessions with a management coaching consultant to work on her problem areas, and plaintiff admits that Wiese did this to encourage plaintiff to improve her attitude before starting in scheduling.

Plaintiff's supervisor in scheduling was Mark Hoffman, and she admits that she had a good working relationship with Hoffman until she received her first evaluation.  In his evaluation of plaintiff for 2001, Hoffman noted that customers and co-workers viewed plaintiff as confrontational.

---

[5]     At the time the program was created, there were three project managers -- plaintiff,  Nelson, and Lee Selby.  There two members of the scheduling department taking part in the cross-training program were Nalley and Potacka.

[6]     Plaintiff refers to Selby as older and female.  The summary judgment record shows that the only employee named Selby in plaintiff's department was Roy L. Selby, a male.  Defendants refer to Selby as Mr. Selby throughout their motion for summary judgment, and plaintiff also later refers to Selby as Mr. Selby.

[7]     Nelson was promoted out of his position as a project manager before he had to take a rotation in the scheduling department.

A necessary part of plaintiff's position in scheduling involved forming positive relationships with customers, and her review notes that customers often thought that plaintiff had a "chip on her shoulder." Plaintiff informed several customers that she did not like working in the scheduling department. Plaintiff does not deny making these statements, but claims that she performed the necessary functions of her job even if co-workers and customers knew she was unhappy working in the scheduling department. Plaintiff disagreed with Hoffman's review and refused to sign it.

Wiese and Hoffman had a meeting with plaintiff, and she accused them of lying on her evaluation. Hoffman presented plaintiff with a memorandum discussing areas of her work performance that needed improvement, but she disagreed with the memorandum. Hoffman asked plaintiff to write her own performance improvement plan. Plaintiff claimed she did not understand the alleged performance deficiencies and she never drafted a plan. On December 24, 2001, Hoffman, Wiese, and a representative from the human resources office held a meeting with plaintiff and offered plaintiff the option of keeping her current job or seeking redeployment within the organization. Plaintiff still did not agree with Hoffman's assessment that she needed to improve her personal skills, and plaintiff decided to seek redeployment. Williams agreed to provide plaintiff full pay and benefits for 60 days while she looked for a new position within the company, but Williams did not agree to pay plaintiff the same salary after redeployment.

Plaintiff applied for many positions, but human resources informed her that many departments were experiencing layoffs and could not hire a new employee. Plaintiff claims that was merely an excuse, alleging that she was blacklisted because she complained about her supervisor in the scheduling department. Due the delay in finding a new position, defendants extended plaintiff's redeployment period until March 31, 2002. If plaintiff did not find a new position by

March 31, 2002, plaintiff would no longer be employed by Williams.  Plaintiff was unable to locate a new position, and defendants formally terminated her employment on March 31, 2002.  She was subsequently rehired on April 15, 2002 as a confirmation analyst for Williams Marketing and Energy Trading with a yearly salary of $43,000.

On January 21, 2003, plaintiff filled out an intake questionnaire providing the Equal Employment Opportunity Commission ("EEOC") information about her allegations of workplace discrimination against defendants.  However, plaintiff did not file a formal EEOC charge until March 3, 2003.  Plaintiff alleges that she was constructively discharged from her position in the independent terminals group because of the hostility exhibited by her supervisors and the alleged lies on her employment evaluations.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 317.  "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).  "Summary judgment will not lie if the dispute about a material

8

fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Durham v. Xerox Corp.</u>, 18 F.3d 836, 838-39 (10th Cir. 1994)

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id.</u> at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

Defendants have filed a motion to strike plaintiff's affidavit, which is attached to her response to defendants' motion for summary judgment as exhibit 14 (Dkt. # 75, Ex. 14) because it is not based on plaintiff's personal knowledge.  According to defendants, Fed. R. Civ. P. 56(e) prohibits plaintiff from opposing a motion for summary judgment with an affidavit that relies merely on her opinions and beliefs.  Rule 56(e) provides that:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . .  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's

9

pleadings, but the adverse party's response, by affidavits or as otherwise provided
in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Tenth Circuit requires the nonmoving party to submit affidavits "based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991). As a general rule, an affidavit may be submitted in response to a motion for summary judgment, as long as it is made on personal knowledge, contains facts that would be admissible in evidence, and demonstrates the affiant's competence to testify to the asserted facts. Plaintiff responds that the affidavit is based on her personal knowledge, and that the opinions she expresses in the affidavit constitute admissible opinion testimony under Fed. R. Evid. 701.

The primary focus of defendants' argument seems to be that plaintiff has submitted an affidavit merely stating her opinions but does not base the factual assertions in the affidavit on her personal knowledge. Plaintiff cites Gossett v. Oklahoma ex rel. Board of Regents for Langston University, 245 F.3d 1172 (10th Cir. 2001), for the proposition that a lay witness may submit an affidavit containing opinion testimony in an employment discrimination case. In Gossett, the plaintiff sued Langston University for discriminating against male students in its nursing program. In opposition to a motion for summary judgment, plaintiff provided the affidavit of Deborah Guy, an instructor at the nursing school, who stated her opinion that the school engaged in a pattern of discrimination against male students. The district court excluded Guy's affidavit because the court found it was not based on the affiant's personal knowledge. The Tenth Circuit reversed the district court's decision to grant summary judgment, finding that Guy's affidavit should have been admitted and created a genuine issue of material fact. The Tenth Circuit stated that

10

> Ms. Guy's affidavit demonstrates that her position as an instructor in the Nursing School and on the Admissions Committee provided her with the opportunity to observe firsthand for several years the School's policies and practices with respect to its treatment of male students. Her opinion was a means of conveying her impression based on what she had herself perceived, and it was predicated upon concrete facts within her own observation and recollection. Consequently, her affidavit was admissible under Rule 701, and the district court abused its discretion in refusing to consider it.

Id. at 1180.

Plaintiff also cites Franks v. Nimmo, 796 F.2d 1230 (10th Cir. 1986), for general guidelines for courts to consider when determining whether plaintiff has submitted a sham affidavit. In Franks, the plaintiff submitted an affidavit in support of his motion to reconsider the court's ruling that he was a probationary employee. However, this affidavit contradicted his deposition testimony and the district court refused to consider the affidavit as a basis for creating a genuine issue of material fact. Id. at 1237. The Tenth Circuit listed several factors that are useful when determining if an affidavit contradicts prior testimony and creates a sham factual issue, such as:

> whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain.

Id. The Tenth Circuit found that plaintiff's deposition testimony was unequivocal and the affidavit was produced only after the district court granted defendants' motion for summary judgment, which justified a finding that the affidavit raised a sham factual issue. Id. at 1237-38.

11

Although defendants cite two instances where plaintiff's affidavit differs from her deposition testimony, the key issue is whether the affidavit is based on plaintiff's personal knowledge.[8]  The Court finds that, even though many of the statements in plaintiff's affidavit are her opinions, the affidavit is admissible.  Plaintiff's opinions about her co-workers and her perceptions about events in the office reflect her personal knowledge to the extent they are based on her experiences at Williams.  As a practical matter, there may be no other way for plaintiff to convey this information except in the form of an opinion.  Her opinions would arguably be admissible at trial under Fed. R. Evid. 701.  See Gossett, 245 F.3d at 1179 ("Courts generally hold admissible under Rule 701 evidence in the form of lay opinion testimony in discrimination cases when given by a person whose position with the defendant entity provides the opportunity to personally observe and experience the defendant's policies and practices.").  There is no dispute that plaintiff is competent to provide an affidavit.  The Court finds that plaintiff's affidavit should not be stricken as an exhibit to her response, but that does not mean the Court will treat plaintiff's opinions about defendants' conduct as a bar to summary judgment.  Plaintiff will still have to present a prima facie case of employment discrimination, even if she holds the opinion that her employer engaged in discriminatory behavior.  Therefore, Defendants' Motion to Strike Affidavit of Vonna Seeber (Dkt. # 86) is denied.

---

[8]     Plaintiff's affidavit contains two additional statements regarding alleged discrimination that she could not recall in her deposition.  In her deposition, she stated that she was basing her age discrimination claim on Williams' tendency to promote younger men and Lee Selby's termination.  She did not remember any statements by Wiese referring to older workers in a disparaging manner.  In her affidavit, she alleges that Wiese made negative comments about older workers.  By itself, this additional statement is not enough to strike the affidavit under Franks, and the Court will focus on defendant's argument that plaintiff's affidavit contains self-serving or inadmissible opinion testimony.

## IV.

Plaintiff brings claims for age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), retaliation in violation of Title VII, sexual harassment in violation of Title VII, wrongful discharge in violation of Oklahoma public policy, and intentional infliction of emotional distress.  For different reasons, defendants are entitled to summary judgment on all of plaintiff's claims.

### Defendants' Use of Subjective Ranking Criteria

Plaintiff claims that Williams' use of subjective ranking criteria to determine salary increases and promotions precludes summary judgment on her Title VII and ADEA claims.  Plaintiff  relies on Garrett v. Hewlett-Packard Company, 305 F.3d 1210, 1218 (10th Cir. 2002)**,** for the proposition that use of subjective criteria in employment evaluations are undisputable evidence of pretext**.** Id. at 1218.  In Garrett, the plaintiff's employer held meetings where supervisors would rank each employee from best to worst and promote employees based on these rankings.  Id. at 1217.  The employer admitted that the rankings could not be verified with objective evidence, other than the opinions of the supervisors.  The Tenth Circuit stated that subjective evaluation methods are viewed with skepticism.  Id. at 1218.  Without evidence that the employer relies on objective criteria to support its evaluations, the employee can rely on subjective evaluation criteria alone to prove pretext to rebut the employer's proffered non-discriminatory reason supporting an adverse employment decision.

In this case, the key issue in dispute is plaintiff's allegedly poor interpersonal skills, which are difficult to evaluate with objective criteria.  However, management personnel are allowed to

exercise discretion in employment decisions and subjective evaluation criteria do not create an inference of discrimination.  Furr v. Seagate Technology, 82 F.3d 980, 987-88 (10th Cir. 1996). Although defendant's evaluation system may have some bearing on the issue of pretext, plaintiff must still make out a prima facie case of age discrimination.  Doan v. Seagate Technology, Inc., 82 F.3d 974, 978 (10th Cir. 1996) ("Even if 'potential' is somewhat subjective, the use of subjective criteria does not suffice to prove intentional discrimination."); Pitre v. Western Elec. Co., Inc., 843 F.2d 1262, 1272 (10th Cir. 1988) ("We recognize that when management considers individuals for upper level positions, subjective factors must play some role.  Their use does not per se constitute discrimination.").  Defendant has presented affidavits, deposition testimony, and employment evaluations spanning eighteen years showing a pattern of complaints about plaintiff's interpersonal skills.  On such an inherently subjective topic, plaintiff can introduce evidence that defendant lacked an objective reason to support any adverse employment action against her, but this certainly does not preclude the Court from ruling on defendant's motion for summary judgment.

**Statute of Limitations under Title VII and the ADEA**

Defendants initially argue that plaintiff's ADEA and Title VII claims are barred by the statute of limitations.  Under Title VII and the ADEA, the aggrieved employee must file a charge with the EEOC within 300 days of the alleged unlawful discriminatory practice. 29 U.S.C. § 626(d)(2);  42 U.S.C. § 2000e-5(e)(1); Duncan v. Manager, Dep't of Safety, City and County of Denver, 397 F.3d 1300, 1310 (10th Cir. 2005).  Failure to comply with this procedural prerequisite will bar a plaintiff's employment discrimination claim. Dartt v. Shell Oil Co., 539 F.2d 1256, 1260-61 (10th Cir. 1976) (compliance with statutory time limitation for filing an EEOC charge is a condition precedent before an employee may sue his employer).  Plaintiff admits that many of the

14

acts she complains of occurred more than 300 days before she was discharged, but she raises two arguments that she claims would extend the statute of limitations: 1) the intake questionnaire she submitted to the EEOC on January 21, 2003 was sufficient to qualify as a formal charge; and 2) the continuing violation doctrine allows plaintiff to rely on acts more than 300 days before her alleged termination because defendant engaged in a pattern or practice of discriminatory conduct.

Plaintiff claims that she filled out a questionnaire to notify the EEOC of her claim on January 21, 2003, and that this should be treated as the date she filed her formal charge in this case. Defendant responds that even if the Court accepts plaintiff's argument, this will allow plaintiff to base her claim only on events occurring after March 28, 2002 (300 days prior to January 21, 2003).[9] The general rule is that if the plaintiff alleges a discrete retaliatory or discriminatory act, the party must file the EEOC charge within 300 days of the specific act. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002). Plaintiff relies on Peterson v. City of Wichita, 888 F.2d 1307 (10th Cir. 1989), to support her argument that an informal "complaint" can be treated as a formal EEOC charge if later amended. EEOC regulations provide that:

> a charge is sufficient when the Commissioner receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional facts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received. A charge that has been so amended shall not be required to be redeferred.

---

[9] Even though plaintiff's redeployment period ended on March 31, 2002, she left the terminal group on December 24, 2001. Defendants assert that plaintiff should be deemed terminated from the date she quit her position with the terminal group, not at the end of the redeployment period.

29 C.F.R. § 1601.12(b).  The Tenth Circuit found that a later verified charge could relate back to a prior, timely filed informal complaint.  It would be inconsistent with the overall policy of Title VII to strictly construe the time limitation against <u>pro se</u>[10] claimants, because Title VII is remedial legislation that should be read "liberally rather than technically."  <u>Peterson</u>, 888 F.2d at 1309. However, section 1601.12(b) will not apply if the defendant has alleged that it would be prejudiced under the circumstances or there is other evidence that shows the intake questionnaire was not intended to be treated as a formal EEOC charge.  <u>Id</u>.

Defendants have not made any allegations of prejudice, but argue that <u>Peterson</u> should not be applied in this case.  In order for the <u>Peterson</u> rule to apply, plaintiff must show that her initial incomplete filing was timely.  Plaintiff filed her questionnaire on January 21, 2003 and she alleges that the last discriminatory act by defendant occurred on March 31, 2002.  After reviewing the information plaintiff provided in the questionnaire, the Court finds that it was sufficiently detailed to alert the EEOC and defendants to the identity of the parties and the nature of plaintiff's claims. The Court will treat the questionnaire as timely filed for any events giving rise to a claim after March 28, 2002.  This does not automatically mean that plaintiff may rely on defendants' conduct before March 28, 2002 as a basis for her Title VII or ADEA claims, because the Tenth Circuit has interpreted <u>Morgan</u> to significantly limit the continuing violation doctrine if plaintiff complains of discrete acts of discrimination.

If plaintiff's EEOC charge refers to discrete acts of discrimination, plaintiff may not rely on the continuing violation doctrine to extend the limitations period.  <u>Martinez v. Potter</u>, 347 F.3d 1208,

---

[10]    In <u>Peterson</u>, the Tenth Circuit found that many claimants were <u>pro se</u> when they filed their EEOC charge.  This consideration is applicable in this case, because it appears that plaintiff was <u>pro se</u> when she initially filed her charge with the EEOC.

1211 (10th Cir. 2003). The Tenth Circuit has stated that "a continuing violation theory of discrimination is not permitted for claims against discrete acts of discrimination, such as termination, failure to promote, denial of transfer, or a refusal to hire." Davidson v. America Online, Inc., 337 F.3d 1179, 1184 (10th Cir. 2003). In this case, several of plaintiff's claims rely on constructive discharge and hostile work environment theories, because she voluntarily quit her job and accepted a lower paying position within the organization. The continuing violation doctrine has not been abolished for hostile work environment claims, but the plaintiff must point to at least one discrete act that occurred with the 300 day limitations period for her claim to be timely. Boyler v. Cordant Technologies, Inc., 316 F.3d 1137, 1140 (10th Cir. 2003) (expressly overruling prior Tenth Circuit precedent "to the extent that these cases held that recovery on a Title VII hostile work environment claim is not available for acts taken outside the statutory time period where plaintiff knew or should have known the conduct was discriminatory when the acts occurred."). The Tenth Circuit did not overrule its prior holdings on what discriminatory acts may give rise to a "pattern-or-practice" claim, so the court's prior precedent on the continuing violation doctrine must still be considered. Davidson, 337 F.3d at 1186 n.3.

There are two basic situations when a continuing violation theory is applicable: (1) when plaintiff shows that defendants engaged in a series of discriminatory acts, and at least one of the acts occurred within the 300 day period; or (2) the defendant maintained a discriminatory policy on an organizational basis both before and after the limitations period. Bennett v. Quark, 258 F.3d 1220, 1226-27 (10th Cir. 2001). The Tenth Circuit has provided three factors to determine if defendant has engaged in a series of discriminatory actions, including

> (1) the subject matter of the acts-whether the violations constitute the same type of discrimination; (2) the frequency of the acts; and (3) the permanence of the acts-

> whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of an act would continue even in the absence of a continuing intent to discriminate.

Id. at 1227.  The Court will consider plaintiff's statutory claims separately, because each is based on a different theory of discrimination and has a discrete factual basis.

Plaintiff may not rely on a pattern or practice theory for her age discrimination claim, because there is no evidence the defendants engaged in a series of acts based on age discrimination or had a company wide policy to treat employees differently because of their age.  Plaintiff did not raise any allegations of age discrimination until she left Williams and she has not produced any evidence of an organizational policy to discriminate against older workers.  Plaintiff was moved into the scheduling department as part of a cross-training program in 2001 for all project managers and schedulers in the independent terminals group.  Although plaintiff attempts to classify her age discrimination claim as a hostile work environment claim, the central thrust of her claim is that she was forced to move to the scheduling department while younger workers were exempt from this requirement.  This is a discrete act which may not be used to form the basis of a pattern or practice claim.  Thus, Plaintiff may not rely on any acts before March 28, 2002 to support her claim for age discrimination.

Plaintiff was aware of the facts supporting her gender discrimination claim for unequal pay before she left the independent terminals group in December 2001.  Applying the third factor from Bennett, plaintiff was on notice that she needed to bring her claim for gender discrimination  based on unequal pay long before March 2003, when she filed her formal EEOC charge.  The continuing violation doctrine does not excuse tardiness in filing an EEOC charge, but allows a claimant to wait to file a claim until a reasonable person would be on notice that she has a claim.  Bullington v.

United Air Lines, Inc., 186 F.3d 1301, 1311 (10th Cir. 1999).  The Supreme Court has stated that each week an employer delivers an unequal paycheck on the basis of discriminatory classification is an adverse employment event giving rise to a claim.  Bazemore v. Friday, 478 U.S. 385, 395 (1986).  Plaintiff's EEOC charge clearly alleges that she was subject to unequal wages for three years before filing her claim and she may not belatedly rely on a continuing violation theory to assert a claim for gender discrimination.

Plaintiff's retaliation claim is based on her allegations that Williams refused to offer her a job with equivalent pay when she was eligible for redeployment because she complained about discriminatory behavior while working at the independent terminals group.  A failure to hire, such Williams' alleged failure to rehire plaintiff during redeployment, is a discrete act for purposes of the 300 day limitation period.  See Morgan, 536 U.S. at 111.  Under Morgan, plaintiff's retaliation claim accrued on March 31, 2002, and this event falls within the 300 day limitation period.  Haynes, 2006 WL 2258836 at *5.  Plaintiff may use prior acts by defendants as background evidence, but such acts are "merely unfortunate event[s] in history which [have] no present legal consequences."  United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977).

Plaintiff may not rely on a pattern or practice theory for her sexual harassment/hostile work environment claim, because she cannot point to one discrete act that occurred within the statutory period.  Under Morgan, the plaintiff may rely on time-barred acts in support of a hostile work environment claim as long as one discrete act occurred within the statute of limitations for filing an EEOC claim.  Boyler, 316 F.3d at 1140.  However, the alleged hostile work environment was within the independent terminals group and plaintiff left that employment on December 24, 2001.  Even using the date plaintiff filed her intake questionnaire, plaintiff's hostile work environment claim is

untimely, because plaintiff may rely only on events occurring after March 28, 2002.  Nothing in plaintiff's response suggest that any events relevant to her hostile work environment claim occurred after December 24, 2001, and consequently, this claim is time barred under 42 U.S.C. § 2000e-5(e).

Plaintiff may not rely on a pattern or practice theory to use events occurring before March 28, 2002 as a basis for her statutory claims.  Therefore, plaintiff's EEOC charge is untimely for any actions taken by defendants before that date.  Because plaintiff alleges no acts of sexual harassment after that date, based on Morgan and Boyler, defendants' motion for summary judgment is granted as to plaintiff's claim for sexual harassment under Title VII.

**Age Discrimination under the ADEA**

Defendants claim that, based on the undisputed facts, plaintiff can not prove a prima facie case for age discrimination under the ADEA.  The ADEA provides, in relevant part: "It shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  By statute, the protections of the ADEA extend only to individuals who are at least forty years of age.  29 U.S.C. § 631(a).

Age discrimination claims brought pursuant to the ADEA are analyzed under the well-established burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).  Branson v. Price River Coal Co., 853 F.2d 768, 770 (10th Cir. 1988) ("Cases brought under the ADEA are subject to the same indirect method of proof used in Title VII cases alleging discriminatory treatment.").  Under this framework, a plaintiff must first make a prima facie showing of

discrimination.  Once plaintiff establishes a <u>prima</u> <u>facie</u> case, a presumption of discrimination arises and the employer has the burden to produce a "legitimate, nondiscriminatory reason" for its actions.  <u>Miller v. Eby Realty Group, L.L.C.</u>, 396 F.3d 1105, 1111 (10th Cir. 2005).  If the employer does so, the employee must prove that the employer's explanation is merely pretext for unlawful discrimination on the basis of age.  <u>Id.</u>

A plaintiff seeking to establish a <u>prima</u> <u>facie</u> case of age discrimination must establish four elements, the first three of which are relatively static across differing fact patterns.  The plaintiff must demonstrate: (1) she was a member of the protected age group, over forty years of age; (2) she was performing satisfactorily; and (3) her employer terminated her employment.  <u>See, e.g., id.</u> at 1111.  As to the fourth element, a plaintiff may either show that she was replaced by a younger worker or "produce evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue."  <u>Creason v. Seaboard Corp.</u>, 263 F. Supp. 2d 1297, 1307 (D. Kan. 2003).  Permitting this alternative showing of differential treatment, rather than replacement, accommodates plaintiffs who, in a reduction-in-force context, may not have been replaced because their position was eliminated.  <u>See</u> <u>Branson</u>, 853 F.2d at 771 ("In reduction-in-force cases, plaintiffs are simply laid off and thus incapable of proving actual replacement by a younger employee.").  There are, in effect, two theories of discrimination upon which a plaintiff may base her claim under the ADEA: the replacement theory or the differential treatment theory.  Plaintiff has introduced no evidence that she was replaced by a younger worker, so plaintiff must produce evidence, either direct or circumstantial, that her employer intended to discriminate against her because of her age.

Plaintiff claims that she has enough evidence to prove a prima facie case of age discrimination; however, even if the Court considers discrete acts of discrimination occurring before March 28, 2002, there is a fundamental flaw with plaintiff's argument that bars her ADEA claim. The summary judgment record does not include any evidence that plaintiff suffered an adverse employment action, which is a necessary part of her prima facie case. Williams offered plaintiff a choice between keeping her job and complying with its request to complete a performance improvement plan ("PIP"), or seek redeployment within the company. Williams unequivocally did not guarantee that plaintiff would be given a position with equivalent pay, or any position at all, during redeployment. The Tenth Circuit has held that placing an employee on a PIP, standing alone, is not an adverse employment action. Haynes v. Level 3 Communications, LLC, --- F.3d ---, 2006 WL 2258836 (10th Cir. 2006). In this case, plaintiff quit before she could be placed on a PIP. Therefore, she must rely on a constructive discharge theory in order to prove that she suffered an adverse employment action under the ADEA.

In order to prove that she was constructively discharged, plaintiff must establish that a reasonable person in the same circumstances would have felt compelled to resign. MacKenzie v. City & County of Denver, 414 F.3d 1266, 1281 (10th Cir. 2005); Exum v. United States Olympic Committee, 389 F.3d 1130, 1136 (10th Cir. 2004). The Tenth Circuit has established a high standard to survive summary judgment on a claim of constructive discharge, stating:

> Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign. Essentially, a plaintiff must show that she had *no other choice* but to quit. The conditions of employment must be objectively intolerable; the plaintiff's subjective views of the situation are irrelevant.

Sandoval v. City of Boulder, 388 F.3d 1312, 1325 (10th Cir. 2004) (quoting Sanchez v. Denver Public Schools, 164 F.3d 527, 534 (10th Cir. 1998)).  This is an objective test, and a court may not consider the employee's or employer's subjective views of the working environment.  Tran v. Trustees of State Colleges in Colorado, 355 F.3d 1263, 1270 (10th Cir. 2004).  It must be apparent that the working conditions would have been intolerable to a reasonable person, not simply that the employee was subjectively unhappy because of the actions of her employer.  See Baca v. Sklar, 398 F.3d 1210, 1216 (10th Cir. 2005).  "If an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged." Jeffries v. State of Kansas, 147 F.3d 1220, 1233 (10th Cir. 1998).

Plaintiff has not offered any evidence that would prove that  a reasonable person would have felt she had no other choice but to resign her employment.  In this case, plaintiff always had the option to keep her job in the scheduling department of the independent terminals group.  She rejected the opportunity to participate in a PIP to improve her allegedly poor interpersonal skills. Plaintiff's disagreement with her supervisor's evaluation, while it may have made plaintiff subjectively uncomfortable, is not objective evidence that her working conditions were intolerable. Williams has presented many years of evaluations, dating back to 1987, showing that plaintiff has consistently been found to have poor interpersonal skills.  However, the Court may not consider plaintiff's personal feelings about these evaluations.  Although plaintiff has introduced evidence of one example when an older worker, Lee Selby, was allegedly terminated because of his age, plaintiff does not ever state Selby's age or produce any evidence that would support an inference that Selby

was fired because of his age.[11]  In an ADEA claim, plaintiff must show that she was constructively discharged "because of her age." Bennett, 258 F.3d at 1229. There is no evidence to support such a finding in this case and plaintiff may not proceed to a jury on a constructive discharge theory.

Plaintiff can not prove a prima facie case of employment discrimination, because she did not suffer an adverse employment action.  She voluntarily quit her position with no guarantee from Williams that she would be able to find a new job by seeking redeployment.  In fact, plaintiff did find a new job within Williams even though the company was downsizing.  Although she accepted a position with a lower salary, plaintiff offers no evidence from which the Court could infer the reduced salary was due to plaintiff's age.  There is no evidence that the working conditions at Williams were objectively intolerable for older workers, and plaintiff may not seek relief under the ADEA when she elected to leave her job, rather than resolve alleged deficiencies with her job performance.  Defendants' motion for summary judgment is granted as to plaintiff's ADEA claim.

**Gender Discrimination under Title VII -- Unequal Pay**

Plaintiff claims that she was paid less than her male co-workers and that Williams failed to promote her because of her gender.  Plaintiff asserts that if she produces any evidence that male employees received higher pay than female workers that she is entitled to present her claim for gender discrimination at trial.  See Miller v. Automobile Club of New Mexico, Inc., 420 F.3d 1098, 1115 (10th Cir. 2005).  Defendants argue that the evidence shows that plaintiff received a salary equivalent, and in some cases, exceeding that of her male counterparts in the independent terminals

---

[11]     Plaintiff merely states that Selby was an older worker.  Selby was a project manager who was moved into the scheduling department as part of the cross training program initiated by Wiese.  Plaintiff admits she does not have any evidence relating to Selby's job performance or that would create an inference that Selby was fired because of his age, other than the fact that Selby was "older."

group.  The Court has already held that plaintiff was on notice of her claim well before filing her

EEOC charge and may not rely on events before March 28, 2002, essentially barring her claim.

However, even if the Court considers acts before March 28, 2002, plaintiff does not have a

legitimate claim for gender discrimination under Title VII.

In this type of case, plaintiff can prove a prima facie case of discrimination under Title VII

by "showing that she occupies a job similar to that of higher paid males."  Sprague v. Thorn

Americas, Inc., 129 F.3d 1355, 1363 (10th Cir. 1997) (quoting Meeks v. Computer Associates

International, 15 F.3d 1013, 1019 (11th Cir. 1994)).  If plaintiff comes forward with sufficient

evidence to prove a prima facie case of gender discrimination, the burden shifts to the defendant to

state a legitimate, non-discriminatory reason for the disparity in pay.  Id.  If the employer meets this

burden, plaintiff must show that the defendant's stated reason is pretextual.  Id.  Plaintiff bears the

burden to show that similarly situated male employees received higher pay.

In Miller, the case most heavily relied upon by plaintiff to defeat summary judgment, the

Tenth Circuit held that the employee did not prove a prima facie case of gender discrimination based

on unequal pay.  420 F.3d at 1115.  The plaintiff in Miller alleged that she performed more duties

than her male co-workers but received the same pay.  The facts showed that the plaintiff worked

more hours that male employees but was also compensated at a higher rate.  Plaintiff also argued

that the person who replaced her was male and that he received a better salary than plaintiff.  The

court found that the new employee was hired for a newly created position, and focusing on the duties

of the two positions, decided that the new employee was not similarly situated.  Id.   Miller shows

the fact-intensive analysis required to survive summary judgment when a claimant alleges that she

received unequal pay.  See also Sprague, 129 F.3d at 1363 (holding that employee did not prove

prima facie case of discrimination based on unequal pay, because job duties between employees differed and higher paid workers had more education and experience); Tidwell v. Fort Howard Corp., 989 F.2d 406 (10th Cir. 1993) (violation of Equal Pay Act, 29 U.S.C. § 206, did not require finding that employer intentionally discriminated against employees under Title VII because there was no evidence of intent to discriminate based on gender).

Based on the evidence in the summary judgment record, plaintiff can not prove a prima facie case of gender discrimination based on unequal pay. The evidence submitted by plaintiff shows that employees in her department received a range of salaries, and that plaintiff received pay equal to or greater than some of her male colleagues. As a baseline, the Court will compare plaintiff's salary to other project managers and schedulers in December 2000. On December 12, 2000, plaintiff was receiving $67,906. At the same time, project managers Nelson and Selby were receiving $68,826 and $71,001 respectively. Plaintiff claims she was more qualified and experienced than her co-workers, but fails to cite to evidence that would support this claim. In the scheduling department, where plaintiff was actually working at the time she quit, Potacka was paid $58,968 in December 2000 and Nalley received an annual salary of $54,906.

The initial burden is on plaintiff to come forward with a prima facie case, such as to show which other workers were similarly situated to her and to introduce evidence of unequal pay. Nulf v. International Paper Co., 656 F.2d 553, 557 (10th Cir. 1981). Plaintiff has failed to do so. The evidence shows that plaintiff received pay equivalent to other project managers and significantly more than other employees in the scheduling department. This evidence does not prove a prima facie case for gender discrimination under Title VII and defendants' motion for summary judgment should be granted as to this claim.

**Retaliation under Title VII and the ADEA**

Plaintiff claims that Williams blacklisted plaintiff, preventing her from obtaining a desirable job during her period of redeployment, because she complained about management and made allegations that Williams discriminated against her.  Defendants argue that plaintiff can not establish a causal connection between any protected behavior and plaintiff's difficulty in finding a new position during redeployment.

It is unlawful for an employer to take any adverse action against an employee for filing a charge or reporting acts of alleged workplace discrimination.  42 U.S.C. § 2000e-3(a).  To prove a prima facie case of retaliation, plaintiff must show that: (1) she engaged in protected opposition to discrimination; (2) her employer took an adverse employment action against her; and (3) there is a causal connection between the opposition and the adverse action.  Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004).  The law is clear that reporting workplace discrimination to the EEOC is protected behavior.  Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999); McCue v. State of Kansas, Dep't of Human Resources, 165 F.3d 784, 789 (10th Cir. 1999).  An employee may establish causation by showing that the adverse employment action occurred soon after the protected activity.  Annett v. University of Kansas, 371 F.3d 1233, 1239-40 (10th Cir. 2004); Burrus v. United Tel. Co. of Kansas, Inc., 683 F.2d 339, 343 (10th Cir. 1982).  "Unless there is a very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation."  O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1252 (10th Cir. 2001).

The Court has already ruled that plaintiff may not rely on events before March 28, 2002 to support her claim for retaliation, except to provide context for the alleged discriminatory acts after

27

that date.  Even if the Court were to consider events before March 28, 2002, there is no evidence that

plaintiff complained about discriminatory conduct to management or filed an EEOC charge before

she elected to seek redeployment on December 24, 2001.  Plaintiff argues that Williams' failure to

offer her a suitable position during her redeployment period constitutes retaliation for complaining

to management.  It is true that plaintiff complained about her dissatisfaction with her supervisors and

her cross-training rotation in the scheduling department; however, it is not clear that she ever made

any allegations that her supervisors discriminated against on the basis of age or gender.  Petersen

v. Utah Dep't of Corrections, 301 F.3d 1182, 1188-89 (10th Cir. 2002) (employer can not be found

liable for retaliation unless plaintiff shows that employer actually knew plaintiff was engaging in

opposition to an unlawful practice under Title VII); Williams v. Rice, 983 F.2d 177, 181 (10th Cir.

1993) (plaintiff must introduce evidence showing that employer knew of plaintiff's EEOC charge

in order to prove prima facie case for retaliation).

Plaintiff has not presented any evidence that she engaged in protected opposition, such as

complaints about unlawful behavior under Title VII,[12] or any evidence to substantiate her theory that

she was blacklisted.  In order to prevail based on events after March 28, 2002, plaintiff would have

to produce evidence showing not only that the independent terminals group knew about her

complaints, but essentially that the entire company was on notice that plaintiff had complained about

gender and age discrimination.  The only adverse employment action that would sustain a claim after

March 28, 2002 is a failure to rehire plaintiff during redeployment.  Plaintiff makes blanket

allegations that she was blacklisted, but she may not rely on the unsubstantiated allegations of her

---

[12]     Plaintiff notes that she informed Wiese that her supervisor, Games, came around plaintiff's
desk and sat on her lap.  Although plaintiff contacted the human resources department,
Wiese asked plaintiff and Games to informally resolve the matter, which they did.  Plaintiff
never filed a formal human resources complaint.

complaint to survive summary judgment.  Fed. R. Civ. P. 56(e); <u>Salehpoor v. Shahinpoor</u>, 358 F.3d 782, 786 (10th Cir. 2004).  Plaintiff has not shown that defendants were aware of her complaints, if she made any, or a causal connection between her complaints and defendants' failure to offer a satisfactory position during redeployment.  Plaintiff may not proceed to a jury on her claim for retaliation, and defendants' motion for summary judgment should be granted as to this claim.

**<u>Wrongful Discharge in Violation of Public Policy</u>**

Defendants claim that plaintiff's common law claim for wrongful discharge is barred because plaintiff has an adequate federal remedy.  In <u>Clinton v. State ex rel. Logan County Election Bd.</u>, 29 P.3d 543 (Okla. 2001), the Oklahoma Supreme Court held that "the existence of federal statutory remedy or a state statutory remedy that is sufficient to protect the identified Oklahoma public policy goal precludes the <u>Burk</u> tort."  <u>Id</u>. at 546.  This Court has interpreted <u>Clinton</u> to preclude a <u>Burk</u> claim when plaintiff also alleges claims under Title VII.  <u>Bolin v. Oklahoma Conference of the United Methodist Church</u>, 397 F. Supp. 2d 1293, 1300 (N.D. Okla. 2005).

However, the Oklahoma Supreme Court's recent decision in <u>Saint v. Data Exchange</u>, 2006 WL1891747 (Okla. 2006), allows a plaintiff to pursue a <u>Burk</u> claim and an ADEA claim.[13]  In response to a certified question from the Northern District of Oklahoma, the Oklahoma Supreme Court held that denying age discrimination claimants a common law remedy for wrongful discharge would violate Art. 5, § 46 of the Oklahoma Constitution.  <u>Id</u>. at 2.  The court relied on <u>Tate v. Browning-Ferris, Inc.</u>, 833 P.2d 1218 (Okla. 1992), which held that denying racial discrimination victims a common law remedy would allow victims of disability discrimination a "more generous

---

[13]     The defendant, Data Exchange, Inc., has filed a motion for rehearing.  The Oklahoma Supreme Court's opinion will become binding precedent only if the court denies the motion for rehearing.

remedy." Id. The Oklahoma Constitution required the court to treat all employment discrimination victims as part of single class. The same rule applied to victims of age discrimination, who would be denied the more extensive common law remedies available to victims of disability discrimination. Plaintiff was allowed to bring a Burk claim for wrongful discharge alleging age discrimination.

Based on Saint, plaintiff's claim for wrongful discharge under Oklahoma law is not precluded; however, plaintiff must still prove that she was actually or constructively discharged. There is no evidence that plaintiff was terminated from her position, because she elected to seek redeployment rather than continue as a project manager. In Collier v. Insignia Financial Group, 981 P.2d 321 (Okla. 1999), the Oklahoma Supreme Court created the following test for constructive discharge in a Burk claim:

> The test requires the trial court to inquire (1) whether the employer either knew or should have known of the "intolerable" work conditions and (2) if the permitted conditions were so intolerable that a reasonable person subject to them would resign. This imposes upon the trial court the obligation to survey the totality of the circumstances which allegedly prompted the constructive discharge, including (but not limited to) the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." If the employer's behavior is so objectively offensive as to alter the conditions of the plaintiff's employment (causing the employee to resign), a retaliatory constructive discharge can be said to have occurred . . . .

Id. at 324. Oklahoma appellate courts have affirmed that Burk protects only those employees who have been discharged in violation of public policy. McCrady v. Oklahoma Dep't of Public Safety, 112 P.3d 473, 476 (Okla. 2005); Barker v. State Ins. Fund, 40 P.3d 463, 467-68 (Okla. 2001); Mason v. State ex rel. Bd. of Regents of University of Oklahoma; 23 P.3d 964, 968 (Okla. Civ. App. 2000).

Plaintiff was not constructively discharged because of discrimination based on her age and gender. The evidence shows that plaintiff disagreed with an employment evaluation and refused to

30

participate in a PIP to remedy areas of deficiency pointed out by her supervisors.  However, there is no evidence in the summary judgment record that would support a finding that the workplace was objectively intolerable to a reasonable person.[14]  Plaintiff points out that Selby, an older male worker, was fired because of his age, but there is no evidence to support an inference that discrimination played a part in Selby's dismissal.  Plaintiff's allegations of unequal pay are meritless, and also do not support an inference of workplace discrimination.  The timing of plaintiff's decision to seek redeployment strongly suggests that plaintiff's unhappiness with criticism of her interpersonal skills was the motivating factor for her departure from the independent terminals group.  This does not mean that a reasonable person would have found the workplace to be intolerable because of age or gender discrimination.  No reasonable jury could conclude that plaintiff was discharged or constructively discharged due to discriminatory behavior in violation of public policy and defendants' motion for summary judgment is granted on this claim.

**Intentional Infliction of Emotional Distress**

Defendant argues that plaintiff's claim for intentional infliction of emotional distress is barred by the statute of limitations and the facts she has discovered do not rise to the level necessary to proceed to a jury under Oklahoma law.  Plaintiff failed to respond to defendants' arguments on this issue.  Plaintiff filed her lawsuit in state court on March 19, 2004, but most of the alleged acts of discrimination and harassment occurred before December 2001.  The statute of limitations for intentional infliction of emotional distress claims is two years.  Okla. Stat. tit. 12, § 95(3); Green v. Johnson, 977 F.2d 1383, 1388 (10th Cir. 1992); Williams v. Lee Way Motor Freight, Inc., 688 P.2d

---

[14]     Plaintiff complains that sexually explicit jokes and remarks were tolerated in the workplace, and that she informed her superiors that this behavior made her uncomfortable.  However, she does not cite this as her basis for quitting the independent terminals group.

1294, 1297 (Okla. 1984).  Therefore, plaintiff may rely only on events occurring after March 19, 2002 to show intentional infliction of emotional distress.

Oklahoma courts have recognized a cause of action for intentional infliction of emotional distress, also known as the tort of outrage.  See, e.g., Gaylord Entertainment Co. v. Thompson, 958 P.2d 128, 149 (Okla. 1998).  The action is governed by the narrow standards laid out in the Restatement Second of Torts, § 46. Id.  In Breeden v. League Services Corp., 575 P.2d 1374 (Okla. 1978), the Oklahoma Supreme Court explained,

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arounse his resentment against the actor, and lead him to exclaim, 'Outrageous!'  The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Id. at 1376.

A plaintiff alleging intentional infliction of emotional distress must establish the following elements: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the emotional distress was severe.  Trentadue v. United States, 397 F.3d 840, 856 (10th Cir. 2005) (applying Oklahoma law);  Computer Publications, Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002).  Under Oklahoma law, the trial court must assume a "gatekeeper role" and make an initial determination that the defendant's conduct "may be reasonably regarded as sufficiently extreme and outrageous to meet the Restatement § 46 standards." Trentadue, 397 F.3d at 856 n.7. If reasonable persons could reach differing conclusions in the assessment of the disputed facts, the court should submit the claim to the jury to determine whether the defendant's conduct could result in liability.

32

Id. The court is to make a similar threshold determination with regard to the fourth prong, the presence of severe emotional distress.  Id.

Based on the evidence presented by defendants, it is clear that plaintiff has no evidence that would support a claim for intentional infliction of emotional distress.  The summary judgment record does not show that defendants engaged in extreme or outrageous behavior, or that plaintiff suffered severe emotional distress.  Case law sets a high standard for finding that the workplace  is so severely contaminated with hostility that a defendant will be found liable for engaging in extreme and outrageous behavior.  Merrick v. Northern Natural Gas Co., 911 F.2d 426, 432-33 (10th Cir. 1990) ("Insubordination, yelling, hostile reactions and the hurt feelings naturally accompanying such conduct do not give rise to a cause for intentional infliction of emotional distress.  We hold that Roberts and Merrick were involved in an ordinary employer-employee conflict"); Anderson v. Oklahoma Temp. Serv., Inc., 925 P.2d 574 (Okla. 1996) (sexually explicit comments at work were not extreme and outrageous because they were tolerated by plaintiff and other employees within the office setting);  Eddy v. Brown, 715 P.2d 74 (Okla. 1986) (repeated insulting actions by other employees and supervisors that caused emotional harm were not so severe or pervasive in the setting in which they occurred to justify submitting claim to jury).  Plaintiff relies on a pattern or practice she claims evidences sex and age discrimination, but there is no indication that this constitutes extreme or outrageous behavior.  Plaintiff's employer was also entitled to honestly assess her work performance and her interpersonal skills without incurring liability for emotional distress.  Her claim that she was subjected to cross-training because of her age and gender do not create an inference that her employer intended to inflict emotional harm.  The record is completely lacking in evidence that plaintiff suffered severe emotional harm because of any actions by her employer.  Therefore,

33

defendants' motion for summary judgment should be granted as to plaintiff's claim for intentional infliction of emotional distress.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment and Brief in Support (Dkt. # 59) is **granted**; Defendants' Motion to Strike Affidavit of Vonna Seeber (Dkt. # 86) is **denied**; Plaintiff's Motion to Strike (Dkt. # 89) and Defendants' Motion in Limine to Exclude Testimony and Evidence by Plaintiff's Expert (Dkt. # 82) are **deemed moot**.

**DATED** this 28th day of August, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT